UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

F I L E D

JUN 2 2 2016

CLERK'S OFFICE
FLINT

KATHLEEN OWEN, as Personal
Representative of the ESTATE OF
ZACHARY MURPHY, deceased

        Plaintiff,

v.

TOWNSHIP OF REDFORD, et al.,

        Defendants.

Case No. 14-13923
HON. TERRENCE G. BERG
HON. STEPHANIE D. DAVIS

---

**ORDER GRANTING IN PART AND RESERVING IN PART PLAINTIFF'S MOTION TO APPROVE DISTRIBUTION OF REMAINING WRONGFUL DEATH SETTLEMENT PROCEEDS AND AWARDING ATTORNEY FEES AND COSTS (DKT. 36)**

In this federal and state law action filed on October 10, 2014, Plaintiff Kathleen Owen, the personal representative of her son Zachary Murphy's estate, alleges that Defendants were grossly negligent and deliberately indifferent to her son's medical needs while he was incarcerated, resulting in his death on August 1, 2013. (Dkt. 1, ¶¶ 11, 38-46.) The parties settled these claims and Plaintiff filed a motion to approve the settlement pursuant to the Michigan Wrongful Death Act, or M.C.L. § 600.2922(5). (Dkt. 23.) The Court held a hearing on that motion on April 30, 2016, and, after considering the evidence presented and determining in light of that evidence that the settlement was in the best interests of the estate of the decedent as well as the wrongful death claimants, the settlement was approved. (Dkt. 32.) This Court's Order approving the settlement reserved the remainder of

the settlement proceeds, after certain attorney fees were set aside, for distribution to the wrongful death claimants. (*Id.* at 3.)

Before the Court is Plaintiff's motion for approval of the distribution of the remaining settlement proceeds and for payment of certain attorney fees and costs.[1] (Dkt. 36.) In short, Plaintiff proposes awarding 42.5% of the net proceeds to each of the decedent's two minor children with the remaining 15% to be paid to Plaintiff, the decedent's mother. (*Id.*) On June 10, 2016, the decedent's brother, Ian Murphy, and father, Daniel Murphy, filed notices of claim seeking a share of the net settlement proceeds. (*See* dkts. 45, 47.) The Court held a status conference in this matter on June 15, 2016 during which the parties clarified that there is no objection by any party to the children's distribution – the decedent's mother, father, and brother are disputing the distribution of the remaining 15% of the net settlement proceeds only.

A hearing was held on Plaintiff's motion on June 17, 2016.[2] (*See* dkt. 41.) The purpose of the hearing was to document the evidence in support of the distribution to the two minor children of the decedent only. Having considered the proposed

---

[1] There is an ongoing dispute in this matter over how the one-third attorney fee should be allocated between the two firms that have represented Plaintiff at different points in this litigation. (*See* dkt. 26.) The one-third attorney fee has been set aside from the net settlement proceeds, and is being held in trust by the Rasor Law Firm pending further order of this Court. (Dkt. 32, p. 2.) Plaintiff's motion to award attorney fees (dkt. 26) was referred to the Honorable Stephanie Dawkins Davis on May 10, 2016 for a hearing and report and recommendation (*see* dkt. 35). As of the date of this Order, a motion hearing is scheduled for September 9, 2016 before Magistrate Judge Davis. (Dkt. 43.)

[2] Present at the hearing was Attorney Rebecca H. Filiatraut on behalf of the estate and Kathleen Owen in her capacity as its executor, Attorney Richard Ford on behalf of Amy Murphy (who is the former spouse of the decedent, and mother of the decedent's two minor children) and the decedent's two minor children, Attorney Scott Kappler on behalf of Kathleen Owen in her individual capacity, Attorney Robert Mouradian on behalf of Daniel and Ian Murphy, and Attorney Bruce Rice as Guardian ad Litem for Ashlyn Murphy, who is a half-sister of the decedent. At the hearing, the Court heard testimony from Amy Murphy.

2

distribution to the decedent's two minor children, having heard evidence in support of this proposed distribution, and having considered the relationships between the children and the deceased, the Court will **GRANT IN PART** and **RESERVE IN PART** the motion.

In this Order, the Court will **APPROVE** the proposed distribution of the net settlement proceeds to Adriana Murphy and Zachary William Murphy, II, only. The Court will also approve the payment of certain attorney fees. The approval and allocation of the remaining 15% distribution among Kathleen Owen, Daniel Murphy, and Ian Murphy will be addressed at a later hearing to be noticed by the Court.

## I. THE MICHIGAN WRONGFUL DEATH ACT

Plaintiff's motion to approve the distribution of the settlement proceeds was filed on May 12, 2016. (Dkt. 36.) Plaintiff's motion to approve the distribution of the net settlement proceeds was filed pursuant to the Michigan Wrongful Death Act, M.C.L. § 600.2922 et seq. (Dkt. 36, ¶¶ 4-8, 12.) The Michigan Wrongful Death Act requires that this Court hold a hearing and approve or reject the settlement in this case. M.C.L. § 600.2922(5). This Court did so on March 30, 2016. (Dkt. 24.)

This Court has jurisdiction to conduct a hearing and to approve or reject the proposed settlement as well as the proposed distribution of the settlement proceeds. *See Robinson v. Fiedler*, 91 F.3d 144, at *3 (6th Cir.1996) (Table Case) (holding that district court had jurisdiction to approve or reject a wrongful death settlement agreement and to distribute proceeds under M.C.L. § 600.2922(5)-(9) and reviewing the district court's approval under the clearly erroneous standard); *see also Estate of*

3

*Fahner ex rel. Fahner v. County of Wayne*, No. 08-CV-14344, 2014 WL 2511666, at *1 (E.D. Mich. June 4, 2014) (approving settlement and disbursement per the parties' stipulated order of dismissal and pursuant to M.C.L. § 600.2922).

Unless waived, notice of the hearing on the settlement and distribution shall be served upon all persons entitled to claim damages, as those persons are defined in the statute. M.C.L. § 600.2922(6)(b). At the distribution hearing on June 17, 2016, it was established that all individuals entitled to claim damages in this matter under the provisions of M.C.L. § 600.2922(3) had received notice of the motion to be brought before this Court to approve the proposed distribution of proceeds.

Also on May 12, 2016, Plaintiff filed an ex parte motion to appoint a Guardian ad Litem pursuant to M.C.L. § 600.2922(6)(c)[3] for one of the wrongful death claimants who is a minor and was without a fiduciary. (Dkt. 38.) The Court approved the appointment of Attorney Bruce A. Rice as Guardian ad Litem ("GAL") to wrongful death claimant Ashlyn Murphy[4] on May 17, 2016. (Dkt. 40.) Attorney Rice filed his report with the Court on behalf of Ashlyn Murphy on June 14, 2016 indicating that Ashlyn Murphy would not seek a distribution payment and that the parties agree that the attorney fees, GAL fees, and distributions to the decedent's

---

[3] This section states in relevant part that if "any interested person is a minor ... for whom a fiduciary is not appointed, a fiduciary or guardian ad litem shall be first appointed..." M.C.L. § 600.2922(6)(c).

[4] Ashlyn Murphy is the decedent's half-sister and a minor. (Dkt. 36, ¶ 8.) The decedent's two minor children, Adriana Murphy and Zachary William Murphy, II, are also wrongful death claimants but have a duly-appointed Conservator and thus do not require a Guardian ad Litem. (*Id.* at ¶¶ 8-9.) The Letters of Conservatorship appointing their mother, Amy Murphy, as Conservator were available at the distribution for the Court's review, and were reviewed by the Court.

4

two minor children should be paid. As Attorney Rice has fulfilled his duties as GAL, he will be released by the Court.

## II. DISTRIBUTION OF NET SETTLEMENT PROCEEDS

In her motion, Plaintiff identifies nine individuals as potential wrongful death claimants under M.C.L. § 600.2922(3). (Dkt. 36, ¶ 8.) Under the proposed distribution, the decedent's mother and executor of the estate, Plaintiff Kathleen Owen, will receive 15% of the net proceeds, and the decedent's two minor children, Adriana Murphy and Zachary William Murphy, II, will each receive 42.5% of said proceeds. (Id. at ¶ 12.) The remaining six claimants, including the decedent's father, brother, three half-sisters, and half-brother, do not receive any of the net proceeds under the proposed plan of distribution. (*Id.*) Daniel and Ian Murphy, the decedent's father and brother respectively, filed notices of claim prior to the June 17, 2016 hearing and are contesting the 15% distribution to the decedent's mother. (Dkts. 45, 47.)

The parties clarified at a status conference on June 15, 2016 and at the distribution hearing that the distributions to the decedent's two minor children are not in dispute. The parties, however, requested additional time to conduct settlement discussions regarding the remaining 15% of the net proceeds. Accordingly, the June 17, 2016 motion hearing was held with respect to the children's distribution payment only.

Michigan's wrongful death statute concerns both wrongful death actions and survivors. *Flores v. Toadvine*, No. 07–11288, 2009 WL 3621112, at *4 (E.D. Mich. Oct. 30, 2009). The statute thus provides for three categories of damages: (1)

5

"reasonable medical, hospital, funeral, and burial expenses for which the estate is liable," (2) "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death," and (3) "damages for the loss of financial support and the loss of the society and companionship of the deceased." M.C.L. § 600.2922(6). As the Sixth Circuit observed in *Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir.2006),

> In Michigan, there is no common-law right to recover damages for a wrongfully caused death. As a statute in derogation of the common law, the wrongful death act must be narrowly construed so that only those damages explicitly provided for in the act are recoverable.

*Id.* at 603 (internal punctuation and citations omitted).

Here, Plaintiff represents, and no evidence has been presented to the contrary, that: (1) there are no outstanding medical, funeral or burial expenses of the decedent for which the estate is liable; and (2) no proceeds should be paid for conscious pain and suffering because there is no evidence that the decedent suffered any. (Dkt. 36, ¶¶ 6-7.)

Instead, Plaintiff seeks distribution of the net settlement proceeds among certain wrongful death claimants for loss of "society and companionship". (Dkt. 36, ¶ 12.) The statute allows for a "fair and equitable" distribution to the heirs who suffered damages "for the loss of financial support and the loss of the society and companionship of the deceased." *See* M.C.L. §§ 600.2922(6), (6)(d). These are the damages under the statute that compensate for losses incurred by a decedent's survivors, not for losses incurred by the decedent or the decedent's estate.

The statute, however, provides "little guidance in deciding how to arrive at a distribution that is 'fair and equitable.'" *Claim of Carr*, 189 Mich. App. 234, 237–38

6

(1991). The definition of "equitable" includes what is fair and right in light of the facts and circumstances of the individual case. *Attorney General v. Ankersen*, 148 Mich. App. 524, 553 (1986). Given the use of the phrase "fair and equitable" in the statutory language, the Michigan Court of Appeals has concluded that "the Legislature intended to vest courts with broad discretion in distributing wrongful death proceeds." *In re Estate of Gettys*, No. 323295, 2015 WL 8283155, at *4 (Mich. Ct. App. Dec. 8, 2015).

As stated, Plaintiff proposes distributing 42.5% of the net settlement proceeds to each of the decedent's two minor children for the loss of their companionship and society with their father. In considering whether damages for loss of society and companionship have been distributed in a fair and equitable manner, the Court shall "assess the type of relationship the decedent had with the claimant in terms of objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship" and will affirm the distribution where it is supported by the evidence of the parties' relationships with the decedent. *Carr*, 189 Mich. App. at 239; *see also Brereton v. United States*, 973 F. Supp. 752, 758 (E.D. Mich. 1997) (loss of society and companionship caused by wrongful death compensates survivors for the destruction of family relationships that result when one family member dies).

Accordingly, "the grief and mental anguish of surviving family members is not to be compensated" because "the idea is to compensate survivors for the absence of those positive elements of the relationship that can no longer be enjoyed because of the decedent's death." *Porter ex rel. Estate of Smith v. Ne. Guidance Ctr., Inc.*, No.

7

213190, 2001 WL 1179672, at *6 (Mich. Ct. App. Oct. 5, 2001). Where parties dispute the nature of a claimant's relationship with the decedent and witnesses testify to diametrically opposed assertions of fact, "the trier of fact must resolve the issue of credibility." *In re Estate of Gettys*, 2015 WL 8283155 at *4 (citing *Kalamazoo Co. Rd. Comm'rs v. Bera*, 373 Mich. 310, 314 (1964)).

At the June 17, 2016 distribution hearing, evidence was presented concerning the relationship the two minor children enjoyed with their father. Their mother, Amy Murphy, testified that the decedent had been a stay-at-home father for most of the children's lives and that, as a result, the children and their father had a particularly close relationship. Even after their parents divorced, their father remained in daily contact with the children, and visited them. According to the testimony, the children have significant mental health care needs as a result of their father's death. In light of Amy Murphy's testimony and the lack of objection from any party as to the children's proposed distribution, the proof establishes that Adriana Murphy and Zachary William Murphy, II are clearly entitled to damages for loss of society and companionship of their father under the Michigan Wrongful Death Act.

In addition to the distribution payments to certain wrongful death claimants, the proposed distribution authorizes the payment of certain attorney fees. (Dkt. 36, ¶¶ 10-11.) First, Plaintiff requests to pay Attorney Rice's Guardian ad Litem fee for his representation of Ashlyn Murphy's interests in this matter. (*Id.* at ¶ 10.) Attorney Rice submitted an itemized bill for $1000, and the Court inquired of the parties at the hearing whether there were any objections and there were none. In

8

addition, Plaintiff requests to set aside $3,300 for the Darren Findling Law Firm for probate estate services provided in relation to the wrongful death settlement and distribution. (*Id.* at ¶ 11.) After these fees are set aside and paid, the net proceeds will be distributed among the wrongful death claimants. (*Id.* at ¶¶ 10-11.) No objection to the payment of these fees has been raised and the Court finds that these fees and reasonable and proper.

### III. CONCLUSION

Having considered the proposed distribution of the net settlement proceeds, having heard evidence in support of the proposed distribution, and having considered the relationship between the two minor children and the deceased, the Court finds that the proposed distributions to Adriana Murphy and Zachary William Murphy, II are both fair and equitable.

Accordingly, Plaintiff's Motion to Approve Distribution of Remaining Wrongful Death Settlement Proceeds (Dkt. 36) is **GRANTED IN PART** and **RESERVED IN PART** for the reasons stated on the record and in this Order.

**IT IS HEREBY ORDERED** that 85% of the wrongful death proceeds set aside for distribution to the wrongful death claimants shall be distributed for the loss of society and companionship as follows:

- Adriana Murphy              42.5%
- Zachary William Murphy, II  42.5%
- Ashlyn Murphy               $0.00
- Danica Murphy               $0.00
- Brandon Owen                $0.00

- Brianna Owen                    $0.00

The distribution of the remaining 15% of the net wrongful death proceeds will be addressed at a later hearing to be scheduled by this Court.

**IT IS FURTHER ORDERED** that the Guardian ad Litem's fee of One Thousand and 00/100 Dollars ($1000) is approved and shall be paid from the remaining settlement proceeds;

**IT IS FURTHER ORDERED** that Attorney Bruce A. Rice is released as Guardian ad Litem for the minor Ashlyn Murphy;

**IT IS FURTHER ORDERED** that attorney fees and costs of the Darren Findling Law Firm in the amount of Three Thousand Three Hundred and 00/100 Dollars ($3,300.00) are approved as reasonable and necessary and said fees and costs shall be paid immediately, FORTHWITH; and

**IT IS FURTHER ORDERED** that this Order does not resolve all pending claims and does not close this case.

**SO ORDERED.**

_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: June 22, 2016

### Certificate of Service

I hereby certify that this Order was electronically submitted on June 22, 2016, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager